Thank you and welcome. It's great to see everybody live today. Our first case for this morning is going to be United States v. Brasby, number 21-1537. Good morning, Your Honors. Good morning. My name is Lori Koch. I'm an assistant federal public defender. I represent the appellant, Troy Brasby. And with the court's permission, I'd like to reserve three minutes for rebuttal. That'll be granted. Thank you, Your Honors. Your Honors, the question today before this court is simply whether a conviction under New Jersey's statute 2C-12-1B1, specifically the portion that speaks to recklessly causing serious bodily injury under circumstances manifesting extreme indifference to the value of human life, whether a conviction under that portion of the statute is sufficient to qualify as a crime of violence under Section 4B-1.2, the Enumerated Offenses Clause of the Sentencing Guidelines definition. And so I think the parties are all in agreement that in this case, we are talking about a case involving heightened recklessness as opposed to ordinary recklessness. And I think that's a distinction with a difference, especially in this case. Now, the Supreme Court, in the case of Borden, explicitly declined to answer. Just so we can be really precise, the least culpable mental state here under the statute is acting recklessly in circumstances manifesting extreme indifference to the value of human life, right? Correct. Okay. Thank you. Yes.  in a situation where it's more complicated than one might think. So the court in Borden talked about the four mental states hierarchy that apply to criminal cases. And they basically said that the top two steps of the hierarchy are purpose, fault, and knowledge. Purpose and knowledge are the most culpable mental states. Those are not the ones that we're concerned with, but the definitions in Borden are important. Do you think that possession of an illegal firearm enters into the equation? Simply possessing the firearm? Yeah. No, I think... He was convicted of that offense. Yes. He was convicted of reckless causing serious bodily injury. That's a good question, Your Honor. Actually, I don't think the judgment... I don't think he was convicted of possession of a firearm. In fact, I'm not sure that there... Well... My note says that Brasby was convicted of a single count of illegal possession of a firearm by a convicted felon. That's the federal conviction for which he's being sentenced on. But to, I hope, more properly answer your question, the facts of the incident below don't even come into play under the categorical approach. Jumping off of Judge Fuentes' question, I noticed that the pre-sentence report doesn't really say what the statute was that we're dealing with. I'm assuming we're all dealing with Section 2C12-1B1, right? Yes, that's correct. Okay, great. And that's clearly... That was in the judgment of conviction. Hence, when the pre-sentence report came out, nobody objected to... I didn't object to that characterization because that was accurate. So, in any event, getting back to the mental states hierarchy, because I think that's what governs here, the purpose and knowledge. Purpose is defined in the Borden case as an actor who consciously desires a certain result. And knowing is that an actor is aware a result is almost certain to follow. And the way Borden characterized those mental states, they require deliberate choice. So, for the purposes of this case, a deliberate choice that Mr. Brasby wanted to injure the victim. Then the next lower two steps on the mental states hierarchy are recklessly and then negligently. And this statute that we're involved with involves recklessly, the New Jersey statute. Borden says that these are less... It involves extreme recklessness. Well, actually, Borden did not deal with extreme recklessness. Borden didn't deal with it. But, obviously, you want to address the elements clause. I think your arguments are strongest on the elements clause. I do hope you'll get promptly to the enumerated clause, which seems like a closer question in this case. Right. I actually don't want to get to the elements clause because that was clearly waived. I think it was waived. So, please, proceed on the enumerated offense clause. Okay. And I think that the consideration of the mental states is still important, even equally as important under the enumerated offenses clause. It is. But when I count up the states, I count up 13 jurisdictions that have just ordinary recklessness. And then another 13 that allow it to rely on extreme recklessness. So, by my count, a slight majority of the states would allow what happened here to qualify as aggregated assault. And the model penal code would, too, I think. Okay. So, do you disagree with those counts? And if those counts are right, doesn't that suggest that the government ought to prevail? Well, I do disagree with those counts, Your Honor, and I wish it were that simple. But there is a problem with the multi-jurisdictional state surveys. I would submit that was done by the Eighth Circuit in the Schneider case, which is what Judge Holman followed. And, of course, the government did one as well here. I'm sorry? The government did one as well here, right? Yes. And, in fact, that just points to my assertion that this is not a simple answer. Because you have the Eighth Circuit, and let me read what Schneider had to say about this. You have two Circuit Courts of Appeals surveying the same 50 states and District of Columbia, and they come to opposite conclusions. How is that helpful? And I can explain why. It's easy to see why they come to such varying conclusions. And then I like to call it the Sanders Circuit Court of Appeals standard. He has his own numerical breakdown, and it's different from either the Eighth Circuit or the Ninth Circuit. And the reason for that is because these statutes are so complicated. In each of the 50 states, they divide things differently. First of all, in a number of the states, they don't classify assaults as aggravated or simple. They're classified as first degree, as third degree. Some are just classified as bodily injury. I heard you say that they come to opposite conclusions. Do you mean the survey of the 50 states, or do you mean something else? Yes, I mean the survey of the 50 states. Do you mean, so in your view, the 50 state survey, all 50 states come to different separate conclusions? All 50 states define extreme indifference, reckless, well, they don't even use that language, many of them. They define assaults differently, so that some, when we're looking for what a generic aggravated assault is, surveying the 50 states is not helpful. Yeah, your point is we shouldn't rely on those findings. Either that or more carefully parse that than what's been done thus far. So, for example, Mr. Sanders, in his appendix, we received a letter, I think a few days ago, that adds the United States jurisdiction, the federal assault offense, 18 U.S.C. 113-A-6. And rightfully so, Mr. Sanders places that in the ordinary reckless. I think you're, I think the federal, I'm surprised you're saying the federal statute's ordinary recklessness. When I look at 111, 18 U.S.C. 111, it requires an intent to assault under FEOLA. I thought that was your best argument, that it requires an intent to assault. Well, I'm making, okay, I'm not talking about 111, I'm specifically referencing, and I don't know why Mr. Sanders didn't include 111 in his schedule. So that's, that is not, that was not a statute that I addressed. But if you look at 113-A-6, assaults within maritime jurisdiction, that's rightfully included facially in the ordinary reckless list. However, the case law hasn't interpreted it to mean that there is an element of willfulness. So when I look at the government's list, I think you can, maybe they are wrong in classifying Arkansas, Colorado, and D.C. But let's assume I'm right, that even if we throw those three out, we have 13-13, we have a bare majority of states that would allow this. And we have the model penal code. And the best argument for you is that the government statute, the federal statute, sorry, go the other way. Why should we give more weight to the federal statutes that require intent or purpose or something than to the states, if I'm right, that the states lean towards allowing at least extreme recklessness to count as aggravated assault, some call it assault in the first degree. Right. So I don't think my strongest argument is the federal statute. And I do think the court should consider the 50 states. And I think when you look at them, let me just read from Schneider. Schneider says, in 31 states and D.C., a conviction for aggravated assault requires a person to cause serious bodily injury with at least an extreme indifference to human life. So Schneider says we come to a majority, how? By adding together crimes of heightened recklessness to purposeful and knowing. Right. Well, no, so that's not exactly right in our situation. That's not right. We're not going on Schneider. I'm going on the government's table and throwing a few out. Okay. We're not going to follow Schneider. We're going to do our own count. So to do your own count, it is not as easy as it looks, is what I'm saying. What are the principles we ought to use? Obviously, these all have different names and substance. What principles should we be applying to make our own list? Okay. Well, if I could just, before I get to that, I'd just like to try to answer Judge Beavis's question, which is, and there was a circuit court that was followed in Schneider, which said defining aggravated assault generically is particularly difficult because many states define assault in terms of degrees rather than with the term simple or aggravated. And they cite some examples. And because some states still retain a common law distinction between assault and battery. So that circuit actually says let's refer to the model penal code because the survey of states is not helpful. But the model penal code cuts in favor of the government. Model penal code's default mens rea is recklessness. I've taught it for many years. And they default to recklessness. So extreme recklessness would suffice. And yes. And I have to agree that that's the case. I would like to hear an answer to Judge Gigeras' question, which is, let's talk in terms of principles here. I think the government's right if we look at these first degree assault statutes and combine them with aggravated assault statutes. Is there a reason we shouldn't be looking and considering first degree assault statutes among these? I think that may be what my colleague is driving at. But please explain it better if you can. Yeah. I'm sorry. I don't recall what your question was. I'm just looking for some principles. We've got a whole bunch of, a whole bevy of states that they differ, the statutes differ in name and substance. What principles should we follow in order to come up with an accurate list? So, well, one of the problems that exists under Mr. Sanders' survey and all the other surveys is that some states define aggravated assault or first degree assault by the type of injury that occurred. So is it a serious bodily injury? Or some of them define it, any physical injury qualifies. So then we have to get into an argument over, we really have to parse these statutes quite carefully to figure out. What's your principle? Should we be looking at injury? Should we be looking at degree? What would you, tell us how to write the opinion. I have the answer for that. We should be looking at the least culpable conduct under the statute. If there's a statute that doesn't call itself aggravated assault, if it calls itself first degree, second degree, should we be looking at the third degree of assault or the first degree of assault? Well, I think to focus on the New Jersey statute, the New Jersey statute here actually calls it aggravated assault. And I don't dispute that. But what we should be looking at is what's the intent that's required. And the intent that's required is recklessly, under circumstances, manifesting extreme indifference to the value of human life. That's not a deliberate choice. How about heightened recklessness? As I believe it was Judge Hillman who concluded that a conviction for aggravated assault in New Jersey can be obtained with a mens rea of heightened recklessness. Yes, we agree. And I would agree that that's what Mr. Brasby pled guilty to, was heightened recklessness. But what I don't agree is that that matches the generic definition of aggravated assault, largely because there is almost no way to achieve a consensus among the states about what is generic aggravated assault. But we have this enumerated offense clause. We can't say it's meaningless. It has some meaning. It's hard to achieve a consensus. We need to write an opinion. We need some principles. The government has given us a list. And their list is, let's look at the top assault, whether it's called aggravated assault or first degree assault in each of these states. And lo and behold, in a majority of them, the way I count it, even if the government's list is slightly over-inclusive, a majority of them require this. So why shouldn't we look at the assault in the first degree statutes that say recklessness or extreme recklessness suffices? Well, you can look at them. But first of all, to get to the majority that the government gets to, how does he do that? He adds the heightened recklessness statute. Yep. 13 plus 13 is 26. The majority of states would have allowed this conviction to qualify as aggravated assault. No, because the 13 that he's adding require purposeful and intentional conduct. No, no, no, no, no. Not at supplemental appendix 60, 61, 62. Sorry, 60 and 61. At 62 and 63, he then lists 22 statutes. And maybe I'd add a couple more from his first list. But he's not getting 13 plus 13 from adding the purpose and intent. Well, I think what he's doing is getting heightened recklessness, which is 16, and adding ordinary recklessness. That's right. Which is 14. Well, if we then I have to again turn to Borden, which said Borden specifically held that ordinary recklessness is not sufficient. Under the elements clause, we're now talking about the enumerated offense clause. Well, I think under the enumerated offense clause, we're just concerned with names. It's enumerated aggravated. Aggravated assault clearly is an enumerated offense. But that's not the end of the inquiry. All right. We're going around in circles here. Let's talk about harmlessness of error. We have a judge who said even if Brasby was right about this, the base offense level would be 14. That would mean a sentence of 30 to 37 months. So and you had admitted that your base offense level computation would be 14. That his theory would leave a base offense level of 14. So why isn't it enough to say that the court said even if we accepted your guideline calculation, I would have varied upward to the same point. It looks to me like he identified the alternatives guideline range and explained why he would have given the same sentence. So why isn't any error on your theory harmless? Because he didn't give any sort of detailed explanation. Rather, what he did, I would submit, is a results-oriented statement on the record, a blanket statement that, and even in the alternate, if I'm wrong, I think what the judge said specifically, if I'm wrong to follow Schneider, I would still depart upward six levels. We're talking a significant upward departure, adding two years. So the range at a level 14 is 30. But he had the legal power to do that. These are advisory guidelines. He doesn't have the legal power to ignore step one of the sentencing guidelines and to ignore Rita and Gall, which say at step one of sentencing, the court must properly calculate the sentence guidelines. But you're suggesting that we simply ignore a very clear statement by a district judge just because there's not enough analysis attached to it? Yes. Okay. Well, don't completely ignore it. I don't, I have great respect for Judge Hellman, and I think that he puts a great deal of thought into his opinions. I think, though... He made a specific finding that Brasby's conviction for recklessness under New Jersey statutes is a crime. And based on that conclusion, he sentenced him to 57 to 71 months. Do you find that problematic? Yes, because if this court agrees that that calculation was wrong, and if Mr. Brasby should have been sentenced at a base offense level that started at 14, then Judge Hellman went from 30 to 37 to 57 to 71 months. He sentenced him to 57 months. He added 20 months. The only explanation in the record that he gave for that was that Mr. Brasby's arrest for the incident of gun possession was so short in time after being released from his prior gun possession conviction. And there was... While the government argues that Judge Hellman went through the 3553A factors, I submit that he was not going through the 3553A factors at that point in the sentence with respect to Mr. Brasby, with respect to the upward variance. I don't think so in terms of the general sentence. You find the short period between one offense and the most recent offense to be an improper consideration? I think it's a valid consideration. I don't think it justifies the significant upward variance that the court imposed here. Six levels is a large variance. Why don't we get you on rebuttal and let your adversary present his case? Thank you, Your Honors. Good morning. Good morning, Mr. Stevens. Steven G. Sanders on behalf of the United States for the appellee in this matter. I want to address the two main questions that Your Honors have posed this morning. What are the principles we use under the Enumerated Offense Clause? And Judge Bevis, I want to address, because I spotted them too, the three jurisdictions in the Heightened Recklessness column that you think might not belong there, which is Arkansas, Colorado, and D.C. But in preparation for the argument, I went back and looked at case law under those statutes, and even though they have language that makes them seem like they're knowledge or intense statutes, they are in fact heightened recklessness statutes under the case law of those jurisdictions. So I've put them in that column. I might point out, and I apologize for this, but I realize now looking at the Knowledge and Intent column that I have Texas in there, and Texas doesn't belong. Texas is an ordinary recklessness state. So the Knowledge and Intent column is actually overstated by one. But let's get back to first principles, right? Well, thank you for your candor. Well, you deserve it from me, and you deserve better than I did in this chart. But let me go back to first principles, right? Under the Enumerated Offense Clause, this Court's question is essentially one of statutory construction, right? And most recently, we have a Supreme Court decision in Esquivel-Quintana which tells us we don't just rely on the 50-state survey, but we also use normal tools of statutory construction. And what I pointed out in the brief, and I think Ms. Koch made a good point in her reply, right, that the definition of aggravated assault in Chapter 2A of the Guidelines, if you look at it, just focuses on serious bodily injury. The reason that the federal assault statute that I cited becomes important is because that provision, which allows conviction under recklessness, is listed as one of the crimes for which that Chapter 2A 2.2 guideline applies. In other words, when the Commission wrote aggravated assault in the original version of the career offender provision, it simultaneously included in the Chapter 2 provision an aggravated assault statute under federal law that could be committed with ordinary recklessness. Which statute? That's 18 U.S.C. 113-A-6. 113-A-6. Right, that's been held to be a general intent crime for which at least three circuits agree recklessness is the standard. That's what the sentencing judge took into account in this case, I gather. Well, he did not, the government did not bring the federal statute to his attention in the district court. But I'm pointing it out here only because before we get into fighting over whether the 8th Circuit got it right or the 9th Circuit, or whether we should conduct our own survey. And I think if we rely on our own survey, it should be independent of those two jurisdictions because I have a problem, a big problem with what the 9th Circuit did. Less of a problem with what the 8th Circuit did. But again, if we start with first principles, statutory construction, what does this guideline mean? I think it goes a long way to showing that the Commission had in mind the kind of aggravated assaults it would have already understood to be covered by Chapter 2A. I have another textual clue. Chapter 2A of the guidelines is entitled, Offenses Against the Person. It just struck me over the weekend, that's a classic model penal code formulation, right? That was an advent of the model penal code to divide offenses between offenses against the person and offenses against property. And I think that's additional sort of, you know, afterglow from the Big Bang, so to speak, right? That the model penal code was on the mind of the drafters of the sentencing guidelines. So let's take that. Marrero. My adversary didn't cite to Marrero, but I'd like to discuss it because I think it's compelling, right? Judge Hardiman in 2012, I believe, wrote an opinion for this court saying that depraved heart murder qualifies as murder under the Enumerated Offense Clause, even though murder in Pennsylvania and at common law could be convicted with extreme recklessness. Now that's important for two reasons. Number one is a logical matter. As I pointed out in my brief, the offense of this extreme indifference aggravated assault offense, the only difference between that and the murder offense that Judge Hardiman was dealing with in Marrero is that the victim survived but was grievously injured. So it makes perfect sense to include that lesser included offense as a crime of violence under aggravated assault. The other reason why it's relevant, and this also struck me recently, but, you know, in 2016, the commission moved all these offenses that had been in an application note into the text of the guideline, right? And presumably they were aware of Marrero at that time, and if they wanted to make a correction and say reckless offenses don't count, right, they would have said something about murder, but they didn't. They left murder untouched. And so I think that's sort of a, if you can read any tea leaves there, the commission is saying reckless offenses are okay under the Enumerated Offense Clause. If you want me to, I can get into some of my issues with the Ninth Circuit. I think they've focused only on first degree offenses, and I don't think that's necessary. I think the methodology should look at any statute that punishes causing serious bodily injury, right, with extreme recklessness, or punishes that more severely than just causing serious bodily injury should be counted, no matter what it's called and no matter what degree it is. It shows that they've adopted in some modified form the model penal code formulation of distinguishing between simple assault and aggravated assault. There are a couple other jurisdictions, I think the ones you pointed out, Judge Bevis, Arkansas, D.C., and Colorado, some of those that the Ninth Circuit did not, they did not put into the heightened recklessness column because of the text of the statute, but they didn't go behind, I think, to the case law to ensure that those statutes are not. I cited in my brief the learned treatises, Wharton and Lefebvre. It's an interesting case. What do you do if you don't have a clear... Which case? I'm sorry, we have Wharton's and Lefebvre's as the learned treatises both indicating that aggravated assault or aggravated battery is aggravated because it includes causing serious bodily injury under extreme indifference. Your adversary came out of the box with Borden. Is that... How do you deal with that? Borden applies to the elements clause. It does not apply to the enumerated offense clause, and I think my adversary's first point is that we waive this argument. I'm here to tell you we didn't, and here's why. At the time that this case was pending in the district court, there was no ability to argue that extreme recklessness should count. Third Circuit law from 1992 on, and those are the same cases Ms. Koch has in her brief later on, Parson and then a series of immigration cases up to Otero, they didn't just say ordinary recklessness can't count. They said intent is required under the elements clause. So we were foreclosed from arguing. Well, but, I mean, you see, Ms. Koch's office consistently has seen it in their briefs. We'll preserve an issue just in case the law changes. Should the government be held to a different standard? No, but the difference is they do that as the appellant, right? They preserve for appeal. If we lost in the district court and now we're appealing to this court and trying to raise the elements clause argument, I'd have a problem, right? It would be forfeited, not waived. We didn't concede that this can never qualify as a crime of violence because what we said is current law forecloses us but current law is in flux. Stay tuned is what we said. Now we're here as appellee defending the judgment on any grounds supported by the record. And by the way, this is a purely legal argument. This is not something that required factual development. There's no unfair surprise because Ms. Koch had no problem dealing very adequately with the claim in her reply brief. So if we get past the waiver argument, I would say this about Borden. We know it's a fracture for sort of 414 decision with Justice Thomas for his own reasons saying he thinks intent should qualify. Meanwhile, chastising his colleagues for striking down the residual clause unnecessarily. But that's past history. But for justices saying extreme recklessness should count because it lies somewhere between knowledge and ordinary recklessness. And the standards that you see in the case law, the cases where are typically charged, firing into a crowded room, driving 100 miles an hour down a crowded street where you know that almost to a substantial certainty, not quite, that you're going to cause grievous injury or death. You're just as morally culpable as you are morally. And for those reasons, we think that if the Supreme Court were to get this question, as the First Circuit, and by Martinez, I believe is the name of the case, held before Borden issued, they would agree that extreme recklessness offense is law. So your argument is with respect to the elements clause argument, First Circuit got it right. First Circuit got it right. And as I noted recently, the Supreme Court presented so vigorously. I have to channel Bob Zosmer for a second. We're here again arguing over whether aggravated assault is a crime of violence. It's a kind of bizarre situation. He shot somebody four times in the back. He was charged with attempted murder and pled down to aggravated assault as part of a plea bargain. And we're here arguing over whether that's a crime of violence. I said to my kids, and I told them whether aggravated assault is a crime of violence. And they're in high school, they're like, duh. That was their answer. And I know we have the categorical approach and we have to apply it. It's not only that easy. I told them that's not an accepted legal term. Judge Hillman concluded that the federal definition of aggravated assault included the same mens rea of heightened recklessness as the New Jersey statutes. Do you agree or disagree with it? I agree. He said that based on his, he agreed with the Eighth Circuit that the generic definition of aggravated assault includes heightened recklessness and that New Jersey, as my adversary conceded below and I think on appeal, New Jersey is a heightened recklessness state. It is the classic model penal code formulation for heightened recklessness. It's almost verbatim. I think they just moved the term recklessly to the end of the sentence compared to the model penal code drafters. But yes, he did agree. Can I go back to something I was talking about a couple of minutes ago? Not to go too far afield, but you're familiar with the Mayo case. Yes. It seems like the statutes are fairly similar in that case and this case. Of course, they dealt with the Pennsylvania statute. Does Mayo apply here and what's the result? Mayo does not apply here because the Pennsylvania statute issue there, I think the panel in Mayo, I think Judge Jordan writing for that panel found that there was a Pennsylvania decision saying that I think starving one's child to death an act of omission was not the use of force. And it was for that reason that in the Harrison Bond, which was recently remitted to the panel, this recklessness issue would have come up, but the court would have had to overturn that holding first. It doesn't seem like it's going to, so the case has gone back. Did we get it right in Mayo? I don't think so, but the point here is that I don't think, certainly my adversary did not point out either below or on appeal any case in New Jersey that could be prosecuted where that's a realistic probability of being prosecuted for aggravated assault for that sort of conduct and even if you could, I would think that that's the use of force even if indirectly. May I? You can go back to your enumerated offense arguments if you want. Well, I will only do that if you have questions for me. I would like to quickly turn to harmless error. I'd like to hear about that. Oh, yes. Okay. And this is the point. Zebielski, right, this court said that a clear statement from the district judge that the guidelines range didn't matter and that the judge chose the sentence he or she chose for the reasons he did, that clear statement will be accepted. Yeah, but don't we have to, well, isn't the standard in a more general sense a high probability that the sentence would be the same? And how can we really, I mean, jumping off of what your adversary told us, I mean, how can we really tell besides a naked sort of statement? Well, because Zebielski said that that sort of statement would suffice and Rhea, this court repeated that, right, because there wasn't a similar statement there and there was a much smaller I think delta in the guideline range to the sentence that was imposed in Rhea and I would just point out that the two cases that the, that are relied on for this proposition that you have to go through the three 553A factors, Langford and Smalley, that language in both of those cases is dicta. I think Ms. was on, was on Smalley and that case Judge Kugler tried to use a post-judgment statement. He tried to file an untimely amended judgment statement saying, oh and if, if I made a mistake I would impose the same sentence anyway. The holding of the court in Smalley was that that was too late and so it wasn't even properly before them. Anything they went on to say about requiring a three 553A analysis was dicta. The same thing in Langford. The government argued that there was an overlapping range there and for that reason the sentence should be deemed harmless. Langford disagreed. It then went on to say and by the way we would require this. But that was not a holding of the court. So in this case you have Judge Hillman who is very familiar with these facts not just that the defendant committed this crime after being released a short time after being released from jail from a similar state gun possession charge but he also knew because it was in the PSR the underlying facts of this of the very 2004 conviction right? They're shooting somebody four times in the back but then that state gun possession charge I see my time is running out so the defendant committed that with less than a year out of getting out of state prison right? For that aggravated assault charge. All that was before Judge Hillman he said even if I'm wrong I would impose the same sentence for the reasons that I've just explained my 3553 analysis and there was no objection from the defense as to that alternative sentence even if there were a requirement that it follow the Gunther three steps I would think then that the I'm sorry the name is escaping me but this court's en banc decision from around 2014 saying that procedural reasonableness objections need to be preserved that you would then need to make an objection at that point. There was no objection to his alternative sentence and given the relatively low swing in the guidelines level right? This is not like the 16 level swing under 201.2 this is a six level swing so we'd ask the court to affirm. Do you have anything else? Okay. Okay. Thank you counsel. Thank you very much. I'm here from the office. Thank you counsel. Go ahead. Thank you your honors. The government just raised and your honor just    whether Mayo got it right. And I think that the this  with medical goods that the th